UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANTWAIN WILLIAMS,

                Petitioner,              **DECISION AND ORDER**

      -vs-                                     No. 06-CV-0356(VEB)

DALE ARTUS,

                Respondent.

_____

## I.  Introduction

Petitioner Antwain Williams ("Williams" or "Petitioner"), proceeding *pro se*, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that his state court conviction was unconstitutional. *See* Docket No. 1. The parties have consented to disposition of the undersigned pursuant to 28 U.S.C. § 636(c)(1). Presently before the Court is Respondent's motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Docket Nos. 8-1, 8-2.

## II.  Factual Background and Procedural History

Following a jury trial in Ontario County Court of New York State, Williams was convicted on October 3, 2003, of charges of third degree criminal possession of a controlled substance and second degree criminal possession of a weapon. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed his conviction on direct appeal on September 30, 2005. *People v. Williams*, 21 A.D.3d 1401 (App. Div. 4th Dept. 2005). Leave to appeal to the New York Court of Appeals was denied on November 22, 2005. *People v.Williams*, 5 N.Y.3d 885 (N.Y. 2005).

Williams filed his federal habeas petition in this Court on May 31, 2006, claiming that his

conviction was unconstitutionally obtained through the state's introduction of evidence seized in violation of his Fourth Amendment rights. Specifically, Williams has divided his Fourth Amendment allegations into three claims alleging that his conviction was obtained: (1) by "use of evidence gained in violation of his Constitutional right against unreasonable searches and seizures"; (2) by "use of evidence obtained due to an unlawful arrest"; and (3) in violation of "the fruit of the poisonous tree doctrine". Petition ("Pet.") at 3-4 (Docket No. 1). As Respondent points out, all three claims are based on the same allegedly unlawful arrest.[1] Respondent's Memorandum of Law ("Resp't Mem.") at 1-2 n.1 (Docket No. 8-2). Williams states in his petition that he exhausted his Fourth Amendment claims on direct appeal. Resp't Mem. at 1-2 (Docket No. 8-2) (citing Pet. at 2-3 (Docket No. 1)).

By Order filed June 12, 2006, the Court (Elfvin, D.J.) granted Respondent permission to file, on or before July 12, 2006, a "motion to dismiss the petition, accompanied by appropriate exhibits which demonstrate that an answer to the petition is unnecessary." *See* Order (Docket No. 3).[2] Respondent then filed a timely motion pursuant to Rule 12(b)(6) of the Federal Rules of

---

[1] Williams attached to his affidavit (Docket No. 17) a transcript of the suppression hearing at which the police testified that they stopped his vehicle using a "suppression device" called a "flash bang" which "causes a very large, bright flash and loud boom for disorientation."

[2] Williams has not argued that respondent's Rule 4 pre-answer motion to dismiss is inappropriate in a habeas case. The Rules Governing Section 2254 Cases In the United States District Courts ("2254 Rules") provide that, rather than require the filing of an Answer (the normal process under Rule 5 of the Federal Rules of Civil Procedure), the Court may "take such other action as the judge deems appropriate" in § 2254 habeas cases. *Accord Purdy v. Bennett*, 214 F. Supp.2d 348, 353 (S.D.N.Y. 2002). The Advisory Committee Notes state that this provision is

> designed to afford the judge flexibility in a case where either dismissal or an order to answer may be inappropriate. For example, the judge may want to authorize the respondent to make a motion to dismiss . . . . In these situations, a dismissal may be called for on procedural grounds, which may avoid burdening the respondent with the necessity of filing an answer on the merits of the petition.

*Purdy*, 214 F. Supp.2d at 353 (quoting Advisory Committee Notes to the 2254 Rules). In this case, the Court had issued an order specifically invoking Rule 4 and granting leave to respondents to move with respect to the petition.

Civil Procedure, to dismiss the petition for failure to state a claim on which federal habeas relief can be granted. *See* Resp't Mem. at 2 (Docket No. 8-2). Respondent argues that dismissal of the petition is warranted because the petition raises only alleged violations of Williams' Fourth Amendment rights, which are not cognizable on federal habeas review under the doctrine of *Stone v. Powell*, 428 U.S. 465, 481-82 (1976). Respondent asserts that based the facts alleged by Petitioner, along with the trial transcripts attached to the petition and the Appellate Division's memorandum and order affirming the conviction on direct appeal "conclusively establish" that Williams "received a 'full and fair opportunity'" to litigate his Fourth Amendment claims in state court. Resp't Mem. at 3 (Docket No. 8-2). In opposing Respondent's motion, Williams concedes that he took advantage of the opportunity to assert his Fourth Amendment claims in state court but disputes the correctness of the state courts' decisions, arguing that this demonstrates that there was an "unconscionable breakdown" in the process . See Petitioner's Response ("Pet'r Resp.") (Docket No. 10); *see also* Petitioner's Affidavit (Docket No. 17).

## III.  Discussion

"[W]here the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure

---

The Court's grant of permission to move with respect to the petition was appropriate because it avoided burdening the respondent with filing a formal answer in the event the respondent was able to raise a dispositive ground for dismissal. Accord Purdy, 214 F. Supp.2d at 353 (rejecting habeas petitioner's challenge to respondent's Rule 4 pre-answer motion to dismiss the petition on statute of limitations grounds; court's order inviting grant of permission to move with respect to the petition was "deem[ed] appropriate" because it "avoided burdening the respondent with filing a formal answer in the event the respondent was able to raise a dispositive ground for dismissal") (citing *White v. Lewis*, 874 F.2d 599, 602-03 (9th Cir.1989) (motion to dismiss habeas petition on procedural grounds is authorized by 2254 Rules); *Ukawabutu v. Morton*, 997 F. Supp. 605, 608 (D.N.J.1998) ("The district court certainly has discretion to order or permit respondents, upon request, to file a motion to dismiss as one of the 'other actions' which the court may allow, including the discretion to permit the filing of a motion to dismiss before a respondent files an answer.")).

was introduced at his trial." *Stone v. Powell*, 428 U.S. at 482.  The Second Circuit has explained that in *Stone v. Powell*, all that the Supreme Court required was that the state have provided the state prisoner the *opportunity* to fully and fairly litigate his Fourth Amendment claim. *Gates v. Henderson*, 568 F.2d 830, 839 (2d Cir. 1977) (*en banc*). "If the state provides no corrective procedures at all to redress Fourth Amendment violations, federal habeas corpus remains available. It may further be that even where the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process, the federal intrusion may still be warranted." *Id.* at 840. The focus of the inquiry as to whether there has been an "unconscionable breakdown" in the state's corrective process must be on "the existence and application of the corrective procedures themselves" rather than on the "outcome resulting from the application of adequate state court corrective procedures." *Capellan v. Riley*, 975 F.2d 67, 71 (2d Cir. 1992); *see also accord Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief. . . . [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim[.]").

Respondent argues that no "unconscionable breakdown" has occurred as Williams does not and cannot contend that New York failed to provide a corrective procedure to redress his alleged Fourth Amendment claim. *See* Resp't Mem. at 4 (Docket No. 8-2) (citing Pet. at 7-9, 14-15, 23; Ex. A) (Docket No. 1); *see also* Pet'r Resp. at 1(Docket No. ). This is because Williams

actually took advantage of the opportunity to challenge the legality of his arrest by means of New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 7 10. 10 *et seq.*, which had been held to be "'facially adequate.'" *Capellan*, 975 F.2d at 70 n. 1 (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) and citing *Gates*, 568 F.2d at 837 & n. 4; *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)). Williams acknowledges that he had the opportunity to present, and did present, the same facts and the same arguments to the state courts that he now asserts in this federal habeas proceeding. Resp't Mem. at 4 (Docket No. 8-2) (citing Pet. at 6, 27) (Docket No. 1).

Williams asserts that his Fourth Amendment claims warrant an exception to the *Stone v. Powell* doctrine because "the Appellate Division neglected to address his claim of 'reasonableness' in connection with the stopping of his car via the use of explosives, along with the added fact that the Appellate Division simply affirmed the trial courts [sic] unsupported decision of probable cause to arrest." Pet'r Resp. at 1 (Docket No. ). Williams contends that the Appellate Division failed "entirely to address [his] substantial Constitutional claim" regarding the alleged use of excessive force to detain his vehicle[3] and that evidences an "unconscionable

---

[3] Williams has cited no federal or New York state authority in support of his claim that suppression is appropriate where the police had probable cause to make an arrest but employed a level of force that allegedly violated Fourth Amendment reasonableness standards. *See*, *generally*, Pet'r Resp.; *see also* Resp't Mem. at 5 (citing Pet. at 6-20, 30). As Respondent points out, the dearth of case law in New York state or at the federal level indicates that it is apparently a novel expansion of the exclusionary rule. *See* Resp't Mem. at 5. Respondent cites *United States v. Arista-Herrera*, 2006 WL 680891, at *4 (D. Neb. 2006), in which the defendant raised a claim similar to Williams' claim. As the district court noted,

> The reported cases concerning excessive force are those dealing with Fourth Amendment violations giving rise to the civil liability of police officers utilizing excessive force and the exclusion of evidence in criminal cases when such evidence was directly obtained by excessive force. The court has found *no cases reported* which find excessive force is a basis to exclude evidence not found in the act of gaining custody of the person by use of excessive force but found later on such person after taken into custody by excessive force.

breakdown" in the state's corrective procedures. *Id.* at 3 (Docket No. ).

On direct appeal, the Appellate Division held that the "police had probable cause to believe that defendant was engaged in or about to engage in criminal activities as he approached the informant's house in a vehicle, and thus the police had probable cause to stop the vehicle[.]" *People v. Williams*, 21 A.D.3d at 1403. The Appellate Division further concluded, "The determination of the suppression court is entitled to great weight and we perceive no reason herein to disturb that determination." *Id.* (citing *People v Prochilo*, 41 N.Y.2d 759, 761 (N.Y. 1977)). Importantly, Williams does not contend that he was denied the opportunity to present the factual and legal grounds for his excessive force claim to the suppression court or to the Appellate Division on direct appeal. Thus, his only basis for contending that the state courts did not conduct a reasoned inquiry into his claim is that the Appellate Division did not explicitly discuss his claim of "'unreasonable search and seizure' in reference to the methods employed in stopping his car" when it affirmed the suppression court's decision regarding the search and seizure. Pet'r Resp. at 2 (Docket No. ). Second Circuit authority refutes this argument, however. In *Capellan v. Reilly*, the Second Circuit held that "the mere fact the Appellate Division did not

---

2006 WL 680891, at *4 (emphasis added). The district court in *Arista-Herrera* decided the issue based on the "inevitable discovery" doctrine articulated by the Supreme Court, which allows admission of evidence "where the government can establish that it would have inevitably discovered the challenged evidence without reference to the illegal conduct giving rise to the primary taint." *Id.* at *5 (citing *Nix v. Williams*, 467 U.S. 431 (1984)). The district court found that defendant "would have been arrested even if the police officers did not use allegedly excessive force to arrest" him and "would have been searched at the scene or at the police station incident to his arrest fulfilling" making the inevitable discovery doctrine exception to the exclusionary rule would be applicable and the evidence seized by the police from defendant's waist area in the hospital would be admissible in evidence. The district court in *Arista-Herrera* stated that defendant's "remedy for any alleged excessive force used to arrest him would lie in a civil proceeding to remedy any violation of his constitutional rights." *Id.* This Court notes that Williams has such a proceeding currently pending in this district. *See Williams v. Ontario Co. Sheriff's Dept.*, No. 05-CV-0883(JTE)(LGF) (W.D.N.Y.).

explicitly address the [petitioner's Fourth Amendment] claim but rather adhered to its original outcome without comment concerning [certain case law] does not mean that the Appellate Division failed to conduct "'a reasoned method of inquiry into relevant questions of fact and law." 975 F.2d at 71 (quoting *Shaw v. Scully*, 654 F. Supp. at 864) (quotation omitted in original; other citation omitted)). The Second Circuit explained that were it to "infer that an unconscionable breakdown occurred . . . because the Appellate Division issued a summary affirmance rather than a written opinion," *id.*, not only would that "reflect doubt regarding the capabilities of the New York courts as 'fair and competent forums for the adjudication of federal constitutional rights,'" *id.* (quoting *Powell*, 428 U.S. at 493 n. 35), but it would also place it "in the position of dictating to state courts that they must issue opinions explicitly addressing the issues presented or else face 'second guessing' by the federal courts[,]" *id.* As the court noted in *Capellan*, the Supreme Court has "pointedly instructed" the federal courts that they "have no power to tell state courts how they must write their opinions" and may "'not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim.'" *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722 (1991)). Thus, under the authority of *Capellan v. Reilly*, 975 F.2d at 71, a summary affirmance in which a Fourth Amendment claim is not explicitly addressed does not prove that the state court failed to conduct an inquiry into the claim and is insufficient to establish that an "unconscionable breakdown" in the state court's corrective process occurred. The Court therefore rejects Williams' argument.

To avoid the preclusive effect of *Stone v. Powell*, Williams argues that he actually is "attack[ing] the procedures utilized by the State Courts in reaching the results of the decisions rendered upon his Constitutional claims" and states that "[n]ever does he attack the results

reached." Pet'r Resp. at 1 (Docket No. ) (citations omitted). The remainder of Williams' pleadings belie that assertion, however. There is no question that Williams is arguing that the state courts erroneously decided his motion to suppress, and he is requesting that this Court conduct a *de novo* factual review of his claims. The relief requested, however, is expressly forbidden by the *Stone v. Powell* doctrine, as the Second Circuit has explained many times: A petitioner's mere dissatisfaction or disagreement with the outcome of a suppression motion is not sufficient to establish that an "unconscionable breakdown" occurred in the existing process in violation of the petitioner's Fourth Amendment rights under the Constitution. *Capellan*, 975 F.2d at 71 ("[T]o the extent that [petitioner] claims that the Appellate Division erred in its ruling . . . , this would not give us authority to review his claims since a mere disagreement with the outcome of a state court ruling is *not the equivalent* of an unconscionable breakdown in the state's corrective process.") (emphasis supplied); *Gates v. Henderson*, 568 F.2d at 840 ("*Stone v. Powell* . . . holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts.").[4]

Here, as noted above, Williams took full advantage of the available state process by presenting his Fourth Amendment claim at both the suppression hearing and on direct appeal, and he has not proved that the state courts failed to conduct a reasoned inquiry into his Fourth

---

[4] The Second Circuit has explicitly rejected the possibility of interpreting *Stone v. Powell* to require the reviewing court to focus on the correctness of the state court's corrective procedures for adjudicating Fourth Amendment claims, rather than on the existence and application of the corrective procedures themselves. According to the Second Circuit, to subject a habeas petitioner's previously litigated Fourth Amendment claims to further federal review would be to assume, "implicitly at least, that state courts were not responsible forums in which to bring constitutional claims such as is presented herein." *Capellan*, 975 F.2d at 71. *Stone v. Powell*, however, "expressly discouraged" it from making such an assumption. *Id.* (citing *Powell*, 428 U.S. at 493-94 n. 35) ("[W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States.").

Amendment claims. Williams' mere disagreement with the outcome of the state courts' rulings "is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72; *accord, e.g., Watkins v. Perez*, No. 05 Civ. 477(GEL), 2007 WL 1344163, *23 (S.D.N.Y. May 30, 2007) (holding that without more, rejection by state appellate court of petitioner's Fourth Amendment claims, is not an "unconscionable breakdown" in the state's corrective process; noting that a "habeas court cannot grant relief simply because it may disagree with the state court's resolution of the claim");; *Huntley v. Superintendent*, No. 9:00CV191, 2007 WL 319846, at *8 (N.D.N.Y. Jan. 30, 2007); *Gonzalez v. Superintendent, Sullivan Corr. Fac.*, 761 F. Supp. 973, *977 (E.D.N.Y. 1991) (state court's denial of petitioner's request for a probable cause hearing on the basis that insufficient facts were asserted to warrant such a hearing did not amount to "unconscionable breakdown" in the process afforded by the state; petitioner was provided, as mandated by *Stone*, with a full and fair opportunity to litigate his fourth amendment claim in the state courts and "[t]he fact that petitioner was denied his request for such a hearing does not, in and of itself, affect the legitimacy of the state process").

Under these circumstances, the doctrine of *Stone v. Powell* precludes this Court from undertaking a *de novo* review of the state courts' fact-finding on Williams' Fourth Amendment claims. Because Williams' petition presents only Fourth Amendment claims that, as discussed above, are not cognizable in a federal habeas proceeding, the Court finds that summary resolution of the petition is appropriate.

**IV.    Conclusion**

For the reasons set forth above, Respondent's motion to dismiss the petition is **GRANTED** and the petition is **DISMISSED** with prejudice. Because the Court finds that

Williams has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c).

  **IT IS SO ORDERED**.

                /s/ *Victor E. Bianchini*
              _____
                VICTOR E. BIANCHINI
                United States Magistrate Judge

DATED:  September 13, 2007
       Buffalo, New York.